<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| NICHOLAS VICTORIA, | Civil Action No. 23-03765 |
| *Plaintiff*, | <u>**OPINION**</u> |
| v. | October 9, 2024 |
| CITY OF ORANGE TOWNSHIP, et al., | |
| *Defendants*. | |

**SEMPER**, District Judge.

The current matter comes before the Court on (1) a Motion to Partially Dismiss Plaintiff Nicolas Victoria's ("Plaintiff") First Amended Complaint ("FAC") filed by the City of Orange Township (the "City") and the City of Orange Township Police Department (the "OPD" and together with the City, "City Defendants") and; (2) a Motion to Partially Dismiss the FAC filed by Defendants Richard Rosamilia, Sergeant Franchot Taylor, Detective Taal Harris, Officer Joshua Anderson, Officer Salvatore Palmieri, Officer Patrick Rohan, and Officer Ryan McKay (together the "Officer Defendants"). (ECF 33; ECF 34.) The Court reviewed all the submissions in support and in opposition and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motions to dismiss are **GRANTED.**

I.      **FACTUAL AND PROCEDURAL BACKGROUND**[1]

When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

Plaintiff brings this action in his individual capacity, and at all relevant times, he was a resident of Orange, New Jersey. (ECF 28, FAC ¶ 2.) Officer Defendants Joshua Anderson ("Anderson"), Taal Harris ("Harris"), Ryan McKay ("McKay"), Salvatore Palmieri ("Palmieri"), Richard Rosamilia ("Rosamilia"), Patrick Rohan ("Rohan"), and Franchot Taylor ("Taylor") were employed by Defendant City of Orange Township Police Department ("OPD") during the incident surrounding this litigation. (*See generally* FAC.)

On or about July 18, 2021, Plaintiff alleges that Officer Defendants, except for Defendant Taylor, were at Plaintiff's residence in response to a call for service for an "emotionally disturbed person." (*Id*. ¶¶ 15-16.) Upon arrival, Officer Defendants found Plaintiff's door locked. (*Id*. ¶ 17.) The lock to Plaintiff's front door was eventually disabled and the front door was opened. (*Id*. ¶ 18.) Plaintiff alleges that at the time Officer Defendants entered his residence, he was on his knees with his hands raised above his head. (*Id*. ¶ 19.) Plaintiff further alleges that upon entering his residence, one of the Officer Defendants tackled and choked him, despite him being on his knees. (*Id*. ¶ 21.)

Plaintiff alleges that the other Officer Defendants heard his pleas for help but declined to intervene despite having the opportunity to do so. (*Id*. ¶ 22.) Plaintiff alleges that one of the Officer Defendants proceeded to handcuff and restrain him on the floor while the remaining Officer Defendants, except for Defendant Sergeant Taylor, proceeded to conduct an allegedly warrantless

---

[1] The facts are taken from the FAC (ECF 28) for purposes of the current motion.

search of Plaintiff's residence. (*Id*. ¶¶ 24-20.) Although Plaintiff alleges that he denied a history of psychiatric or emotional issues and denied suicidal ideation or possessing a weapon, he alleges that Officer Defendants proceeded to make a mental health arrest and transport Plaintiff to the East Orange General Hospital for evaluation. (*Id*. ¶ 32.) At the hospital, Plaintiff received a medical and psychiatric evaluation and was subsequently discharged. (*Id*.) Plaintiff alleges that one of the Officer Defendants completed and signed a false police report, wherein he intentionally, knowingly, and illegally stated that when the police entered his residence, Plaintiff refused numerous commands and would not comply with the Officer Defendants' requests. (*Id*. ¶ 34.) On or about July 20, 2021, Plaintiff filed an internal affairs complaint with Defendant City of Orange Township Police Department. (*Id*. ¶ 35.) One of the Defendant Officers was assigned to the investigation of Plaintiff's internal affairs complaint, and Plaintiff alleges that the Defendant Officer failed to investigate the internal affairs complaint. (*Id*. ¶¶ 35-36.)

On July 14, 2023, Plaintiff filed the initial five count Complaint in this matter against the City of Orange Township, the City of Orange Township Police Department, and several police officers, except for Officer Rohan and Sergeant Taylor (collectively "Original Officer Defendants"). (ECF 1.) On or about September 8, 2023, Original Officer Defendants moved to dismiss the original complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF 7.) The Court held oral argument on February 23, 2024. (ECF 25.) On February 26, 2024, the Court issued an opinion dismissing, in part, the initial complaint against Original Officer Defendants without prejudice. (ECF 26-27.) Plaintiff's allegation of violation of the New Jersey Constitution was dismissed with prejudice. (*Id*.)

On February 29, 2024, Plaintiff filed an amended Complaint including the Original Officer Defendants and naming two additional officers as defendants, Officer Rohan and Sergeant Taylor.

(ECF 28.) On March 22, 2024 and March 27, 2024, Officer Defendants and the City and OPD filed Partial Motions to Dismiss the amended Complaint, respectively. (ECF 33; ECF 34.)

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### III.    <u>LEGAL ANALYSIS</u>

The FAC asserts three constitutional causes of action under 42 U.S.C. § 1983 ("Section 1983"). In Counts I and II of the FAC, Plaintiff contends that the Officer Defendants and the City Defendants violated Plaintiff's civil rights under the Fourth and Fourteenth Amendments and equal protection rights under the Fourteenth Amendment of the United States Constitution. In Count III, Plaintiff asserts a *Monell* claim against the City Defendants.

To state a claim under Section 1983, a plaintiff must allege facts showing that (1) he was deprived of "rights, privileges, or immunities" afforded him under the United States Constitution or other federal law, and (2) "the conduct complained of was committed by a person acting under color of state law." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011); *see* 42 U.S.C. § 1983. Section 1983 does not create any substantive rights; it merely provides a means to redress violations of federal law committed by state actors. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

Under *Monell*,[2] a municipality cannot be held liable under a respondeat superior theory, *i.e.*, solely because it employs a tortfeasor; instead, "a city is only liable under Section 1983 for constitutional violations that are caused by its official policies and customs." *Porter v. City of Philadelphia*, 975 F.3d 374, 383 (3d Cir. 2020) (citing *Monell v.New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978)); *see also Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 761 (3d Cir. 2019) (explaining that a municipality is only liable for a policy or custom promulgated by an actor with final decision-making authority). "A policy need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purposes of Section 1983. A pertinent decision by an official with final decision-making authority

---

[2] *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).

on the subject constitutes an official policy for purposes of *Monell* liability. *See Porter*, 975 F.3d at 383 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)) ("Municipal liability under § 1983 attaches where . . . a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

### a. Officer Defendants Motion to Dismiss

#### i. Count I – Alleged Violation of Civil Rights

Plaintiff alleges violations of his civil rights under the Fourth and Fourteenth Amendments of the United States Constitution. Specifically, Plaintiff contends that Officer Defendants violated his civil rights by using excessive force, conducting an unjustified and illegal warrantless search of his residence, filing and signing a police report containing false information, and illegally arresting and falsely imprisoning Plaintiff. (ECF 28, FAC Count I ¶ 2.)

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. Thus, to state a Fourth Amendment claim, a plaintiff must allege facts showing that (1) defendants' actions constituted a "search" or "seizure" within the meaning of the Fourth Amendment, and (2) this search or seizure was "unreasonable." *Id.*; *see Lange v. California*, 141 S. Ct. 2011, 2017 (2021). "An action is 'reasonable' under the Fourth Amendment, regardless of the individual [defendant's] state of mind, as long as the circumstances, viewed objectively, justify the action." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) (quotation marks and alterations omitted).

#### 1. Alleged Failure to Intervene – Original Officer Defendants

In Count I, Plaintiff contends the Officer Defendants, aside from Officer Rohan and Sergeant Taylor, failed to intervene despite their awareness of the excessive force used against Plaintiff. Officer Defendants do not contest this allegation in the FAC and, in fact, concede that the "only viable claim is the failure to intervene claim as to Defendants Rosamilia, Harris, Anderson, Palmieri, and McKay." (ECF 33-3, Off. Defs. Br. at 6.)

### 2. Alleged False Police Report – Officer Anderson

Officer Defendants contend that the claim against Officer Anderson for allegedly filing a false police report should be dismissed as this is not a proper cause of action. The Court agrees.

The filing of a false report, "is not itself a constitutional violation." *Brown v. Elmwood Park Police Dep't*, No. 19-9565, 2019 WL 1745984, at *3 (D.N.J. Apr. 18, 2019) (quoting *Washington v. Essex Cnty. Sheriff's Dep't*, No. 14-7453, 2017 WL 4858120, at *2 (D.N.J. Oct. 25, 2017) (internal quotation marks and citations omitted)). Furthermore, Plaintiff fails to meaningfully or substantively oppose Officer Defendants' contentions with respect to the above allegation.[3] Therefore, Plaintiff's allegation fails to state a claim for which relief may be granted and cannot be remedied by virtue of amendment.

As a result, Officer Defendants' motion is **GRANTED** as it pertains to the false police report claim and the claim is **DISMISSED with prejudice** as it relates to Officer Anderson.

### 3. Alleged Failure to Conduct an Internal Affairs Investigation – Sergeant Taylor

Officer Defendants next assert that Plaintiff's claim regarding the alleged failure to conduct an internal affairs investigation should be dismissed because it is similarly not a recognized cause

---

[3] *Rudolph v. Adamar of New Jersey, Inc.*, 153 F. Supp. 2d 528, 539 (D.N.J. 2001) (noting that plaintiff's failure to oppose defendant's motion to dismiss resulted in plaintiff's implicit concession of arguments in motion to dismiss); *cf. DiPaolo v. Moran*, 407 F.3d 140, 145 (3d Cir. 2005) ("[T]he District Court was authorized to consider [opponent's] arguments waived, and we do so as well. Accordingly, the District Court did not err in granting the unopposed motion for Rule 11 sanctions.").

of action. Again, Plaintiff fails to dispute this assertion or make any substantive argument relating to the same. Regardless, the Court agrees with Officer Defendants as there is "no statutory, common law, or constitutional right to investigation of another." *Collura v. City of Philadelphia*, 590 F. App'x 180, 185 (3d Cir. 2014).

As a result, Officer Defendants' motion is **GRANTED** as it pertains to the alleged failure to conduct an internal affairs investigation and the claim is **DISMISSED with prejudice**.

### 4. Statute of Limitations – Officer Rohan[4]

Section 1983 claims are subject to New Jersey's two-year statute of limitations on personal injury actions. *See Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013) (*per curiam*) (citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)). The date when a cause of action under Section 1983 accrues is determined by federal law. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Genty v. Resolution Trust. Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)). "Under federal law, a cause of action accrues, and the statute of limitations begins to run when the plaintiff knew or should have known of the injury upon which its action is based." *Kach*, 589 F.3d at 634 (internal quotation marks and citations omitted). "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)). In determining whether an action should be dismissed for non-compliance with a statute of limitations, the Third Circuit has cautioned that "[if] the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quotation omitted).

---

[4] Sergeant Taylor has been dismissed from this action on separate grounds (*see supra* Section III.a.i.2.). Therefore, the Court's analysis and decision with respect to Officer Defendants' statute of limitations argument does not consider Sergeant Taylor.

Officer Defendants argue that the claims brought in the FAC against Officer Rohan violate the statute of limitations. (ECF 33-3, Off. Defs. Br. at 11). Specifically, Officer Defendants state that Officer Rohan allegedly "assaulted [Plaintiff] on July 18, 2021 . . . [t]herefore, Plaintiff's claims against [Officer Rohan] accrued in July 2021, and any claims as to [Officer Rohan] had to be filed by July 2023. Nevertheless, Officer Rohan [was] not named . . . until February 29, 2024. Therefore, all claims are time-barred as against [Officer Rohan]." (*Id.* at 12.) Plaintiff responds that the relation back doctrine applies to this case under "Rule 15(c)(3)."[5] (ECF 37, Pl. Opp. at 13.) However, the Court finds, as explained below, that Plaintiff fails to satisfy the second requirement of Rule 15(c)(1)(C) because he does not show that the Officer Rohan received notice of the action within 90 days of the filing of the original Complaint.

Rule 15(c)(1)(C) has three requirements. First, the requirements of Rule 15(c)(1)(B) must be met. Fed. R. Civ. P. 15(c)(1)(C). Second, the newly named defendant must have received notice of the action such that he will not be prejudiced in defending on the merits within the period provided by Federal Rule of Civil Procedure 4(m), *i.e.*, 90 days from the filing of the original complaint. Fed. R. Civ. P. 15(c)(1)(C)(i). Third, the newly named defendant knew or should have known, within the Rule 4(m) period, that but for a mistake concerning the proper party's identity he would have been named in the original complaint. Fed. R. Civ. P. 15(c)(1)(C)(ii).[6]

Rule 15(c)(1)(C)(i), the notice requirement, does not require that the newly named defendant receive notice of the original complaint by service of process; instead, "notice may be deemed to have occurred when a party who has some reason to expect his potential involvement

---

[5] The Court notes that Plaintiff improperly cites to Rule 15(c)(3), which does not exist in the Federal Rules of Civil Procedure. Based on Plaintiff's substantive argument, however, the Court interprets Plaintiff's argument under Federal Rule of Civil Procedure 15(c)(1)(C).

[6] The Court notes, and the Officer Defendants do not dispute, that the claims against the Moving Defendants arise out of the same conduct and occurrence described in the Original Complaint. Accordingly, the first requirement of Rule 15(c)(1)(C) is met. As the Court finds that Plaintiff fails to satisfy the second requirement of Rule 15(c)(1)(C), the Court does not address whether Plaintiff satisfies the third requirement of Rule 15(c)(1)(C).

as a defendant hears of the commencement of litigation through some informal means." *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 195 (3d Cir. 2001). In the Third Circuit, notice can be actual or constructive. *Id.* The Third Circuit recognizes two methods of constructive notice. *Id.* at 196-97. The first is the "shared attorney" method which requires that the newly named defendant share an attorney with one of the defendants named in the original complaint. *Id.* at 196. The second is the "identity of interest" method, which requires that the parties be "so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* at 197 (quoting 6A Charles A. Wright et al., Federal Practice & Procedure § 1499, at 146 (2d ed. 1990)). Thus, in this case, to satisfy Rule 15(c)(1)(C)(i), Plaintiff must show that within the 90-day period after the filing of the original Complaint, that is by October 12, 2023, Officer Rohan received actual or constructive notice of the lawsuit.

Here, Plaintiff contends that "the existence of a shared attorney between the original and proposed new defendant and an identity of interest between these two parties has deemed to impute notice. Both are present in this situation." (ECF 37, Pl. Opp. at 13.) Despite this general assertion, Plaintiff fails to set forth any facts or details whatsoever to support his contention that Officer Rohan has received actual or constructive notice of the original complaint within 90 days of its filing.[7] While Plaintiff argues the "shared attorney" method and "identity of interest" method apply, these methods require that the Officer Defendants' counsel represented Officer Rohan and the other officers concurrently during the 90-day period following the filing of the original

---

[7] However, Plaintiff fails to disclose how he ultimately discovered Officer Rohan's name between the time of filing his original complaint and his FAC.

complaint, or that Officer Rohan worked with the other officers during that 90-day period.[8] *Bates v. City of Elizabeth, NJ*, No. 20-20129, 2022 WL 2289558, at *5 (D.N.J. June 24, 2022).

Ultimately, despite his broad contentions, Plaintiff does not set forth any facts to support his contention that counsel represented Officer Rohan during the relevant period. Moreover, the record does not support a finding of shared representation or communication between Officer Rohan and counsel which occurred before the 90th day for service of the original complaint. Therefore, notice may not be imputed to the Moving Defendants through the shared attorney method. *Id.* (footnote omitted) (citing *Maliandi v. Montclair State Univ.*, No. 14-1398, 2017 WL 935160, at *3 (D.N.J. Mar. 9, 2017), *aff'd*, No. 14-01398, 2017 WL 3023205 (D.N.J. July 17, 2017) (declining to impute notice via the shared attorney method where "[p]laintiff offer[ed] nothing more than speculation that the proposed defendants were actually represented by counsel of record"); *Lockwood v. City of Philadelphia*, 205 F.R.D. 448, 452 (E.D. Pa. 2002) (holding that the individual newly named officers did not have constructive notice of the action based upon the City's representation)). Accordingly, Plaintiff has failed to show the constructive or actual notice necessary to use the relation-back rule of Rule 15(c)(1)(C).[9]

---

[8] It is a matter of public record -- and thus judicially noticeable -- that Officer Rohan has been employed by the Hopatcong Police Department since 2022. Furthermore, according to a certification submitted by counsel for Officer Defendants ("Mr. Antoine"), Plaintiff's counsel inquired with Mr. Antoine about service of Officer Rohan in March 2024 because Officer Rohan no longer worked with OPD, and Mr. Antoine agreed to waive service as soon as Mr. Antoine could locate and contact Officer Rohan. (ECF 38-1, Ex. A, Certification of Wilson D. Antoine, Esq. ("Antoine Certif."), at ¶ 3.) Therefore, in the 90 days between July 14, 2023 (the original filing date of the complaint), and October 12, 2023 (the last day on which process could be served pursuant to Rule 4(m)), Officer Rohan was neither represented by Counsel for Officer Defendants, nor working with any of the other Officer Defendants. (ECF 38, Off. Defs. Rep. Br. at 5.)

[9] *Bates*, 2022 WL 2289558, at *5 n.7 ("The Court notes that the Moving Defendants assert that [their counsel] was not retained to represent them until after they were named as defendants in the First Amended Complaint, after the relevant 90-day period. Plaintiff does not set forth any facts to counter the Moving Defendants' assertion, and the Court does not find any evidence of shared representation in the record. Notably, [defendants' counsel] did not file an official entry of appearance nor file any motions or pleadings on behalf of the Moving Defendants during the relevant period." (internal citations omitted)).

Based upon the foregoing, Officer Defendants' motion is **GRANTED** and the excessive force claim against Officer Rohan is **DISMISSED without prejudice**.[10]

### 5.  False Arrest and False Imprisonment Claims – Officer Defendants

Under Count I, Plaintiff further alleges claims of false arrest and false imprisonment. (ECF 28, FAC Count I ¶ 2.) Officer Defendants assert, however, that Plaintiff's FAC effectively pleads the presence of probable cause, thereby "vitiating any claims for false arrest or imprisonment." (ECF 33-3, Off. Defs. Br. at 16.) The Court agrees with Officer Defendants.

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). To state a claim for false imprisonment, a plaintiff must establish: (1) that he was detained; and (2) that the detention was unlawful.[11] *James v. City of Wilkes-Barre*, 700 F.3d 675, 682 (3d Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 389 (2007)).

"[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). However, "[f]alse arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell*

---

[10] Plaintiff is granted leave to amend the FAC with respect to his excessive force claims against Officer Rohan to set forth facts and/or details to support his contention that Officer Rohan has received actual or constructive notice of the original complaint within 90 days of its filing. Plaintiff may also address whether he satisfies the requirements of the state-court fictious party pleading rule, as made applicable through Rule 15(c)(1)(A).

[11] "False arrest and false imprisonment are nearly identical claims and are generally analyzed together." *Jones v. Somerset Cnty. Prosecutor's Off.*, No. 15-2629, 2015 WL 5248573, at *4 (D.N.J. Sept. 9, 2015) (internal quotation marks and citations omitted). "Nonetheless, they are still distinct claims: [t]he basis for false arrest is the arrest itself, whereas the basis for false imprisonment is the detention that follows the false arrest." *Id*. (internal quotation marks and citations omitted) (alterations in original).

*University*, 834 F.3d 457, 477 (3d Cir. 2016)). There is "no constitutional principle 'that a police officer who reasonably believes he has probable cause must conduct further investigation or risk a subsequent charge of failing to exercise due diligence.'" *Sanducci v. City of Hoboken*, 719 A.2d 160, 164 (N.J. Super. Ct. App. Div. 1998). Under a false arrest case, probable cause is evaluated as of the time of the arrest. *See Wright v. City of Philadelphia*, 409 F.3d 595 (3d Cir.2005).

Relevant here, the Fourth Amendment's probable cause requirement also "applies to warrantless seizures for purposes of involuntary commitment, and the fundamental inquiry remains the same: whether the government's conduct was objectively reasonable under the circumstances." *Catlett v. New Jersey State Police*, No. 12-153, 2015 WL 9272877, at *4 (D.N.J. Dec. 18, 2015) (citing *Doby v. DeCrescenzo*, 171 F.3d 858, 871 (3d Cir. 1999)). In particular, "[w]hen there is probable cause to believe that a person is a danger to himself or others, an officer may reasonably seize and detain a person for a psychiatric evaluation without offending the Fourth Amendment." *Catlett*, 2015 WL 9272877 at *4 (citing *Must v. West Hills Police Dep't*, 126 Fed. App'x 539, 542-43 (3d Cir. 2005) ("[T]he temporary involuntary commitment of those deemed dangerous to themselves or others qualifies as a 'special need' permitting the state to act without a warrant."); *Cole v. Town of Morristown*, 627 F. App'x 102, 106 (3d Cir. 2015) ("[I]t is not unreasonable to temporarily detain an individual who is dangerous to herself or others.").

As per the FAC, the Officer Defendants reported to a locked residence, in response to a request for police intervention with an emotionally disturbed person. (ECF 28, FAC ¶¶ 16-17.) At the time of the arrest, Officer Defendants believed they had probable cause to make a mental health arrest and to affect the "requisite continued detention necessary to ensure that Plaintiff received a medical evaluation." (ECF 33-3, Off. Defs. Br. at 18.) Officer Defendants state that the existence of probable cause is "underscored" by the facts set forth in the police reports that are integral to

and referenced in the FAC. (*Id*; *see* ECF 33-2, Ex. 1, "OPD Incident Report.") The report establishes that at the time prior to the arrest, there was a call indicating that Plaintiff intended to commit suicide and was in possession of a firearm. (ECF 33-2, OPD Incident Report at 2.) Upon arrival, Officer Defendants "knocked for several minutes at [Plaintiff's] door" and announced their presence. (*Id*.) Officer Defendants were unsuccessful in gaining entry and contacted the building superintendent to open Plaintiff's door, however, none of the superintendent's keys worked. (*Id*. at 2-3.) While waiting on the Orange Fire Department ("OFD") to conduct a breach of the door, Plaintiff's next-door neighbor corroborated that she overheard Plaintiff arguing with someone about "seeing a psychiatrist." (*Id*. at 3.) Upon OFD's arrival, Officer Defendants attempted one last time to allow Plaintiff to open his door and speak with emergency personnel, but the Officer Defendants received no response. (*Id*.) Once inside the apartment, it was determined that Plaintiff should receive a psychological evaluation given that emergency services received a call of self-harm and that he refused to open his door for said services to speak to him (*Id*.) Plaintiff was then transported to East Orange General Hospital. (*Id*.) Based upon the foregoing, the Court determines that at the time of the arrest, the Officer Defendants' conduct was objectively reasonable under the circumstances as there was probable cause to believe that Plaintiff was a danger to himself or others.[12]

Despite considering the facts in the Complaint and drawing all reasonable inferences in Plaintiff's favor, the Court concludes the allegations are insufficient to support claims for false arrest or false imprisonment. Accordingly, Defendant's Motion to Dismiss Count I as to

---

[12] When there is probable cause to believe that a person is a danger to himself or others, an officer may reasonably seize and detain a person for a psychiatric evaluation without offending the Fourth Amendment. *See Must*, 126 Fed. App'x at 542-43 ("[T]he temporary involuntary commitment of those deemed dangerous to themselves or others qualifies as a 'special need' permitting the state to act without a warrant."); *see also Cole*, 2015 WL 5559462 at *3 ("[I]t is not unreasonable to temporarily detain an individual who is dangerous to herself or others.").

the false imprisonment and false arrest claims is **GRANTED**. The false arrest and false imprisonment claims contained within Count One will therefore be **DISMISSED with prejudice**.

### 6.   Unlawful Search – Original Officer Defendants

Plaintiff alleges in his FAC that Officer Defendants Anderson, Harris, Palmieri, Rosamilia, and McKay conducted an unjustified, illegal warrantless search of Plaintiff's residence. (ECF 28, FAC Count I ¶ 2.) The Officer Defendants argue that consent and exigent circumstances justified the search. The Court agrees with Officer Defendants.

"Warrantless searches and seizures inside someone's home . . . are presumptively unreasonable unless the occupants consent or probable cause and exigent circumstances exist to justify the intrusion." *United States v. Cole*, 437 F.3d 361, 365-66 (3d Cir. 2006). In other words, "[c]onsent is an exception to the requirements of both a warrant and probable cause." *United States v. Murray*, 821 F.3d 386, 391 (3d Cir. 2016) (quoting *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011)). Furthermore, the "Fourth Amendment generally prohibits warrantless entry into a home but prohibition does not apply where entry is made 'with the voluntary consent of an individual possessing authority.'" *Catlett*, 2015 WL 9272877 at *3 (quoting *Georgia v. Randolph*, 547 U.S. 103, 109 (2006); *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)).

While the FAC alleges that after handcuffing Plaintiff, the Officer Defendants "searched Plaintiff's residence including his bedroom, family room and kitchen, and bathroom" and the search was "not a search of items in plain view" (ECF 28, FAC ¶¶ 24-25), the FAC and Plaintiff's opposition ignores crucial context which is critical in understanding the Officer Defendants' actions.

The police report, which is integral to the FAC, outlines that the Officer Defendants arrived at Plaintiff's residence, after Plaintiff's girlfriend alerted OPD that Plaintiff wished to "kill himself

with his gun." (ECF 33-2, Ex. 1, OPD Police Report at 1.) Upon arrival, the Officer Defendants knocked on Plaintiff's door repeatedly, announcing their presence, but there was no answer at the door. (*Id*.) Subsequently, the superintendent for the building consented to the Officer Defendants entering the apartment. (*Id*. at 2.) Once inside Plaintiff's residence, the Officer Defendants placed Plaintiff in handcuffs and conducted a search for firearms. (*Id*.)

Despite Plaintiff's contentions, the Officer Defendants did not violate Plaintiff's Fourth Amendment rights when they entered, and subsequently, searched his apartment for firearms. As stated in the police report, the superintendent consented to the initial entry, but more significantly, exigent circumstances justified the entry and the search based on the information the Officer Defendants reasonably relied upon at the time of the incident. *See Minnesota v. Olson*, 495 U.S. 91, 100 (1990) (explaining exigent circumstances exist to justify warrantless entry into a home where there is a risk of danger to persons inside a dwelling); *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) ("[E]xigent circumstances exist where officers reasonably . . . believe that someone is in imminent danger.") (internal quotations and citation omitted); *see also Doby*, 171 F.3d at 871 (noting the fundamental inquiry is whether the government's conduct was objectively reasonable under the circumstances).

Based upon the foregoing, Officer Defendants' Motion to Dismiss Count I as to the unlawful search claim is **GRANTED**. The unlawful search claims contained within Count I are therefore **DISMISSED with prejudice**.

### ii. Count II – Violation of Equal Protection Rights under Fourteenth Amendment

#### 1. Equal Protection Claims

The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §

1. A plaintiff raising an Equal Protection claim "must present evidence that s/he has been treated differently from persons who are similarly situated." *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010) (internal citation omitted). In other words, a plaintiff must allege that (1) they are a member of a protected class; (2) they were treated differently from similarly situated individuals; and (3) the disparate treatment was based on their membership in the protected class. *See Kaul v. Christie*, 372 F. Supp. 3d 206, 254 (D.N.J. 2019); *see also Mascio v. Mullica Twp. Sch. Dist.*, No. 16-206, 2016 WL 4880511, at *3 (D.N.J. Sept. 13, 2016); *see also Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992).

Plaintiff, having pled that he is an "African American Male," has sufficiently alleged membership in a protected class. *See, e.g.*, *Fitzpatrick v. Bergen Cnty. Prob. Dep't.*, Civ. No. 05-1520, 2005 WL 1126794, at *3 (D.N.J. May 5, 2005) (noting that protected classes include race, alienage, national origin, and sex). However, Plaintiff fails to assert that he was treated differently from other similarly situated individuals. Although Plaintiff broadly alleges that there "exist numerous examples of Defendants' disparate treatment of Plaintiff . . . in that other similarly situated members of the public, who engaged in conduct similar to that which Plaintiff engaged in were not subject to the same treatment" (ECF 28, FAC Count II ¶ 5), and that "Defendants' disparate treatment of Plaintiff aforesaid which included a white police officer . . . choking Plaintiff about the head and neck, was due to Plaintiff's membership in a protected class as an African American" (*id*. ¶ 6), the FAC contains no facts to support these generalizations. Sweeping assertions that a party was treated differently from others without more is not enough to sustain an Equal Protection claim, and accordingly, Plaintiff's claim will be dismissed.[13]

---

[13] The equal protection claim in Plaintiff's original Complaint was dismissed without prejudice for failure to plausibly allege discriminatory animus and disparate treatment. (ECF 26, "February Opinion" at 6.) In the FAC, the only new allegation in support of showing discriminatory animus and disparate treatment is a statement that the officer who allegedly employed excessive force (Officer Rohan), is Caucasian. Plaintiff fails to offer any specific allegations

Plaintiff has failed to remedy the identified deficiencies in his original Complaint with respect to his equal protection claim. As a result, Officer Defendants' motion to dismiss is **GRANTED**, and his equal protection claim shall be **DISMISSED with prejudice**, as per the Court's Order dismissing Plaintiff's original Complaint. (*See* ECF 27, "February Order" at ¶ 3.)

### b. City and OPD Motion to Dismiss

#### i. Dismissal of Orange Police Department

As a threshold matter, the City and OPD contend that OPD is not a proper party defendant in a Section 1983 action because it is merely a department/administrative arm of the municipality. (ECF 34-2, City MTD. at 5.) Plaintiff concedes dismissal of OPD from this litigation. (ECF 39, Pl. Opp. at 4.)

Administrative arms of a municipality such as police departments and the municipality itself are treated as a single entity for purposes of Section 1983. *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 29 n.4 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of [S]ection 1983 liability."). Therefore, "[p]olice departments cannot be sued alongside municipalities [under Section 1983] because a police department is merely an administrative arm of the municipality itself." *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 912 (3d Cir. 2003).

Based upon the foregoing, Defendant's motion to dismiss is **GRANTED** as to OPD and OPD is **DISMISSED with prejudice** from Counts I, II, and III of the First Amended Complaint.

#### ii. Count I – Failure to Conduct an Internal Affairs Investigation

Count I of the FAC asserts that the City Defendants failed to investigate Plaintiff's internal affairs Complaint. Even taking Plaintiff's allegations as true, no cause of action exists for failure

---

suggesting that the Officer Defendants considered or were motivated by Plaintiff's race or that Officer Defendants treated Plaintiff different from similarly situated individuals.

to conduct an internal investigation. Specifically, there is "no statutory, common law, or constitutional right to investigation of another." *Collura*, 590 F. App'x at 185. In his opposition, Plaintiff conflates the obligation for police departments to have policies and procedures in place to address citizen complaints with a constitutional protection under the Fourth and Fourteenth amendments of the United States Constitution. (ECF 39, Pl. Opp. at 5-7.)

Here, City Defendants did not violate Plaintiff's constitutional rights by their alleged failure to properly conduct an internal investigation. The City Defendants' motion to dismiss is **GRANTED** and Count I of the Complaint is **DISMISSED with prejudice** as it pertains to the claims surrounding the internal investigation.

### iii.   Count II – Equal Protection Claims

As discussed *supra*, to state a claim for a violation of the Equal Protection Clause, a plaintiff must allege at a minimum that "he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips v. Cnty. Of Alleghany*, 515 F. 3d 224, 243 (3d Cir. 2008). Again, a municipality or municipal agency may be held liable under Section 1983 only if its official policy or custom causes a constitutional injury.[14]

To the extent these allegations are directed towards the City Defendants, the Court reiterates that nowhere in Plaintiff's FAC does Plaintiff assert that the City Defendants maintained discriminatory policies, practices, or procedures that disparately impacted Plaintiff because of his race. Instead, Plaintiff baldly asserts that Officer Defendant Rohan, a white police officer, choked

---

[14] *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 658 (1978)) ("When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.").

Plaintiff because Plaintiff is a member of a protected class.[15] (*See* ECF 28, FAC Count II ¶ 6.) Plaintiff fails to identify or point to any such instances that would tend to demonstrate that the City Defendants subjected Plaintiff to different treatment compared to other similarly situated individuals based on Plaintiff's membership in a protected class. Plaintiff's complaint is devoid of any specific allegation suggesting that the City Defendants acted with discriminatory animus in enacting or enforcing its polices and/or procedures, or in overseeing the investigation into Plaintiff's internal affairs complaint.

As a result, the City Defendants' motion to dismiss Count II of Plaintiff's FAC is **GRANTED** and Count II is **DISMISSED with prejudice**.

### iv.    Count III – Section 1983 *Monell* Claims

Plaintiff asserts that there is municipal liability flowing from his constitutional Section 1983 claims. For constitutional torts, municipalities and local governments cannot be held liable on a *respondeat superior* theory. Instead, municipal liability for the acts of municipal employees must be premised on the doctrine of *Monell*. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013). The "official policy" requirement in *Monell* "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible"—acts, in other words, which municipality "has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original).

---

[15] The Court's analysis here is the same as discussed *supra* in Section III.a.ii.1. That is, Plaintiff alleges that "[t]here exist numerous examples of Defendants' disparate treatment of Plaintiff, an African American male, in that other similarly situated members of the general public, who engaged in similar conduct to which Plaintiff engaged in were not subject to the same treatment . . ." (FAC Count II ¶ 5.)

To establish a prima facie case for *Monell* liability, Plaintiff must "(i) demonstrate the existence of an unlawful policy or custom; (ii) that resulted in a deprivation of the rights, privileges, or immunities secured by the Constitution or laws of the United States; and (iii) that the policy or custom was the proximate cause of the alleged deprivation." *Maldonado v. City of Passaic Bd. of Educ.*, No. 17-12245, 2020 WL 289649, at *7 (D.N.J. Jan. 21, 2020) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A government policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Beck*, 89 F.3d at 971 (3d Cir. 1996) (quoting *Bielevicz*, 915 F.2d at 850). In contrast, "a course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law." *Beck*, 89 F.3d at 971 (3d Cir. 1996) (quoting *Bielevicz*, 915 F.2d at 850).

In the FAC, Plaintiff asserts that the City Defendants failed to investigate or properly conduct Plaintiff's internal affairs complaint. As discussed in Section III.b.ii, *supra*, there is "no statutory, common law, or constitutional right to investigation of another." *Collura*, 590 F. App'x at 185. Notwithstanding, Plaintiff has also failed to establish that the failure to conduct such an investigation was the motivating factor behind the alleged constitutional violation. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)). Accordingly, a *Monell* claim cannot be brought against the City Defendants because Plaintiff does not allege that the City Defendants' policy and/or customs violate the constitution and was the moving force behind the Officer Defendants alleged constitutional violations.

Accordingly, the Court finds that Plaintiff has not documented an official municipal policy, such as a proclamation, policy, or edict that resulted in Plaintiff's alleged injuries. Nor has Plaintiff

sufficiently alleged a *de facto* policy or practice establishing *Monell* liability. Although Plaintiff argues that "a municipality's failure to institute adequate procedures to air citizen complaints may demonstrate deliberate indifference which gives rise to civil rights liability" (ECF 39, Pl. Opp. at 7), the FAC does not provide factual support for his proposition that these incidents are expressive of some general OPD policy. Instead, Plaintiff imputes nefarious purpose to the City Defendants who were performing their job functions in response to a call for service for an "emotionally disturbed person." (ECF 28, FAC ¶¶ 15-16.) Finally, Plaintiff does not point to any other comparable situations or incidents in which the OPD's alleged practices resulted in injuries to other individuals.

Therefore, the City Defendants' motion to dismiss as to the FAC *Monell* claim against the City is **GRANTED**, and the Monell claim is **DISMISSED without prejudice.**

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the Defendants' motion to dismiss Plaintiff's Complaint (ECF 9), is **GRANTED.** An appropriate Order accompanies this opinion.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:    Clerk
cc:    Leda D. Wettre, U.S.M.J.
    Parties